# IN THE UNITED STATES DISTRICT COURT
# FOR EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN CARR and MARILYN CARR, | : | CIVIL ACTION - LAW |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| GILLIS ASSOCIATED INDUSTRIES, INC., | : | |
| a division of LEGGETT & PLATT, INC., and | : | |
| JARKE CORPORATION, | : | |
| Defendants | : | NO. 04-CV-5345 |

## ORDER

AND NOW, this    day of                    , 2006, upon consideration of the Motion for Summary Judgment of defendant Gillis Associated Industries, Inc., a division of Leggett & Platt, Inc. and any response thereto, it is hereby **ORDERED** and **DECREED** that said Motion is **GRANTED**. This action is dismissed with prejudice.

BY THE COURT:

_____
Honorable Thomas N. O'Neill

# IN THE UNITED STATES DISTRICT COURT
# FOR EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN CARR and MARILYN CARR, | : | CIVIL ACTION - LAW |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| GILLIS ASSOCIATED INDUSTRIES, INC., | : | |
| a division of LEGGETT & PLATT, INC., and | : | |
| JARKE CORPORATION, | : | |
| Defendants | : | NO. 04-CV-5345 |

## MOTION FOR SUMMARY JUDGMENT

Defendant Gillis Associated Industries, Inc., by and through its attorneys, hereby moves for summary judgment and in support thereof avers as follows:

1. Plaintiff Brian Carr was allegedly injured on January 16, 2003, while working at Welex, Inc., when he fell from a ladder while attempting to reach parts from a shelf in the stock area. A true and correct copy of plaintiffs' complaint is attached hereto as Exhibit "A".

2. At the time, plaintiff was using a rolling steel ladder manufactured by Gillis Associated Industries, Inc. in or about 1989 or 1990, which had been subsequently purchased by Welex. It is alleged that while Mr. Carr was standing on the ladder reaching toward the shelf for a part, the ladder rolled away, causing him to fall and injuring his back and knee. A loss of consortium claim has been asserted on behalf of Marilyn Carr. See Exhibit "A".

3. Plaintiffs have asserted causes of action against Gillis Associated Industries, Inc. and Jarke Corporation[1] for strict products liability and negligence.

4. Through their liability expert, plaintiffs aver the accident was caused by a lack of sufficient resistance between the rubber crutch tips on the bottom of the front tubular legs of the ladder and the surface of the floor. According to plaintiffs' expert, Miles Buchman, the ladder is defective because the rubber crutch tips wore through, allowing the bottom of the steel tubing of the front legs to come into direct contact with the flooring. Mr. Buchman further opines that, had the rubber crutch tips contained metal inserts, the tubular feet would not have broken through the rubber and the accident would not have occurred. Alternatively, Mr. Buchman contends that the warning accompanying the product was insufficient to alert the user of this defect. A true and correct copy of the report of Miles Buchman is attached hereto as Exhibit "B."

5. Since its purchase by Welex, the subject ladder has been in Welex' exclusive possession and control. An investigation conducted by Welex concluded that the accident was caused by, <u>inter alia</u>, poor maintenance of the ladder. A true and correct copy of the accident investigation report is attached hereto as Exhibit "C."

6. As evidenced by the attached affidavit from Gillis' General Manager of Inside Sales and Service, the rubber crutch tips on the ladder at the time of the accident were <u>not</u> the original tips provided at the time of manufacture; nor were they replacements obtained from or manufactured by Gillis. A true and correct copy of the affidavit of Mark Jones, Gillis Associated Industries General Manager of Inside Sales and Service, is attached hereto as Exhibit "D".

---

[1] Jarke Corporation has been voluntarily dismissed from this action by stipulation of counsel.

7. In addition, the exemplar crutch tips provided by Gillis for examination by Mr. Buchman, which Mr. Buchman opines would be proper for the ladder in question and would have prevented the accident, are in fact the same and only type of crutch tips ever utilized by Gillis as either original equipment or made available for sale as a replacement part. <u>See</u>, Exhibit "D". The affidavit further indicates, as does the testimony of other witnesses who have been deposed, that the crutch tip on the ladder at the time of the accident was not the one originally provided by Gillis at the time of sale or sold by Gillis as a replacement part, but had in fact been purchased from a third party and installed by Welex.

8. Since the ladder was sold with the type of tips conceded by their expert to be proper, plaintiffs fail, as a matter of law, in their attempt to show that the ladder was dangerous or defective at the time of sale.

9. As set forth at length in the accompanying memorandum of law, there has been no evidence presented to date that ladder was defective as a matter of law and/or any alleged defect was the proximate cause of plaintiff's accident.

10. There is no outstanding issue of material fact, and defendant is entitled to summary judgment in its favor as a matter of law.

          Respectfully submitted,
          WILSON, ELSER, MOSKOWITZ,
          EDELMAN & DICKER LLP

By: _____
     Jonathan Dryer, Esquire
     Pa.Attorney I.D. No. 34496
     Attorney for Defendant
     Gillis Associated Industries, Inc.

Dated: January 30, 2006

175302.1

# IN THE UNITED STATES DISTRICT COURT
# FOR EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN CARR and MARILYN CARR, | : | CIVIL ACTION - LAW |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| GILLIS ASSOCIATED INDUSTRIES, INC., | : | |
| a division of LEGGETT & PLATT, INC., and | : | |
| JARKE CORPORATION, | : | |
| Defendants | : | NO. 04-CV-5345 |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANT GILLIS ASSOCIATED INDUSTRIES, INC., A DIVISION OF LEGGETT & PLATT, INC.**

Defendant Gillis Associated Industries, Inc., a division of Leggett & Platt, Inc. (hereinafter "Gillis") hereby submits this Memorandum of Law in support of its Motion for Summary Judgment.

**I.  Background**

Plaintiff Brian Carr was allegedly injured on January 16, 2003 while working at Welex, Inc. when he fell from a ladder while attempting to reach parts from a shelf in the stock area. See Exhibit "A". At the time, plaintiff was using a rolling steel ladder manufactured by Gillis Associated Industries, Inc. in or about 1989 or 1990, which had been subsequently purchased by Welex. It is alleged that while Mr. Carr was standing on the ladder reaching toward the shelf for a part, the ladder rolled away, causing him to fall and injuring his back and knee. See Exhibit "A".

Plaintiffs have asserted causes of action against Gillis Associated Industries, Inc., a division of Leggett & Platt, Inc. and Jarke Corporation[2] for strict products liability and negligence. Discovery is now closed and the parties have exchanged expert liability reports.

Through their liability expert, Miles Buchman, plaintiffs aver the accident was caused by the lack of sufficient resistance between the rubber crutch tips on the bottom of the front tubular legs of the ladder and the surface of the floor. According Mr. Buchman, the ladder is defective because the rubber crutch tips wore through, allowing the bottom of the steel tubing of the front legs to come into direct contact with the flooring. Mr. Buchman further opines that, had the rubber crutch tips contained metal inserts, the tubular feet would not have broken through and the accident would not have occurred. Alternatively, Mr. Buchman contends that the warnings accompanying the ladder at the time of sale insufficiently instructed the user as to how to avoid the danger created by this alleged design defect. See Exhibit "B."

The subject ladder has been in the exclusive possession and control of plaintiff's employer, Welex, since its purchase in approximately 1990. An investigation conducted by plaintiff's employer concluded the accident was caused by, inter alia, poor maintenance of the ladder, in particular, the condition of the crutch tips. See Exhibit "C."

As evidenced by the attached affidavit from Mark Jones, Gillis' General Manager of Inside Sales and Service, the rubber crutch tips on the ladder at the time of the accident were not the original tips provided at the time of manufacture; nor were they replacements obtained from or manufactured by Gillis. A true and correct copy of the affidavit of Mr. Jones is attached hereto as Exhibit "D". In addition, the exemplar crutch

---

[2] Jarke Corporation has been voluntarily dismissed from this litigation by stipulation of counsel.

tips provided by Gillis for examination by Mr. Buchman, which Mr. Buchman opines would be proper for the ladder in question and which would, in his opinion, have prevented the accident, are in fact the same and only type of crutch tips ever utilized by Gillis as either original equipment or made available for sale as a replacement part. See, Exhibit "D". The affidavit further indicates, as does the testimony of other witnesses who have been deposed, that the crutch tips on the ladder at the time of the accident were not the ones originally provided by Gillis at the time of sale or sold by Gillis as a replacement part, but had in fact been purchased from a third party and installed by Welex.

## II.     LEGAL ARGUMENT

### A.     Standard for Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To defeat summary judgment, a plaintiff "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### B.     Applicable Law

Pennsylvania has adopted §402A of the Restatement (Second) of Torts, which imposes strict liability upon the manufacturer or seller of a product in "a defective

175302.1

condition unreasonably dangerous to the consumer or user." Craley v. Jet Equipment and Tools, Inc., 2001 Pa. Super. 171, 778 A.2d 701, 705 (Pa. Super. 2001). There are three types of defective conditions which may give rise to strict liability: design defect, manufacturing defect, and failure to warn defect. Weiner v. American Honda Motor Company, Inc., 718 A.2d 305, 307 (Pa. Super. 1998). In a strict products liability action, a plaintiff must prove that the product was defective, and that the defect was a substantial factor in causing the injury. Spino v. John S. Tilley Ladder Company, 696 A.2d 1169, 548 Pa. 286 (1977). It is plaintiff's burden to demonstrate that the injuries sustained were proximately caused by the product's defect. Jacobini v. B&O Press Company, 588 A.2d 476, 527 Pa. 32 (1991). The failure to establish either element bars recovery as a matter of law. Philips v. A-Best Products Company, 665 A.2d 1167, 542 Pa. 124 (1995).

Strict liability may be imposed only on proof that the product lacked an element necessary to make it safe for its intended use. Weiner, supra; Restatement (Second) of Torts, §402A. The intended use of a product includes any use reasonably foreseeable to a manufacturer. Kalik v. Allis-Chalmers Corp., 658 F. Supp. 631 (W.D. Pa. 1987). The intended use, while primarily an inquiry into the manufacturer's intent, is measured against an objective standard of reasonableness. Pacheco v. The Coats Company, Inc., 26 F.3d 418, 422 (3rd Cir. 1994).

Under Pennsylvania law, whether a product is defective under the facts alleged by the plaintiff is initially a question of law to be answered by the trial judge. Mackowick v. Westinghouse Elec. Corp., 525 Pa. 52, 575 A.2d 100, 102 (Pa. 1990). In its determination, the court should make a social policy analysis and balance the utility of the product against the seriousness and likelihood of injury and the availability of

precautions that might prevent the injury. Fitzpatrick v. Madonna, 424 Pa. Super. 476, 623 A.2d 322, 324 (Pa. Super. 1993). If the judge determines as a matter of law that Pennsylvania's social policy supports placing the risk of loss on the manufacturer in a given situation, then the case goes to the jury for a determination as to whether the facts alleged by the plaintiff are true. Azzarello v. Black Bros. Co., 480 Pa. 547, 391 A.2d 1020, 1027 (Pa. 1978). In Azzarello, the Supreme Court of Pennsylvania held that in a strict products liability action, the trial judge must make the threshold legal determination of whether the defect alleged, if proven, would render the product "unreasonably dangerous" as that term is defined in Restatement (Second) of Torts, §402A. It is the function of the court to initially decide whether, under plaintiff's averment of facts, recovery would be justified. Azzarello, 391 A.2d at 1026. When deciding this issue, the court must first view the evidence in a light most favorable to the plaintiff to determine if a defect may be found. Burch v. Sears, Roebuck and Co., 320 Pa. Super. 444, 450-51, 467 A.2d 615, 618-19 (Pa. Super. 1983).

Under a failure to warn theory, "a product may be deemed defective if it lacks adequate warnings or instructions necessary for safe use of the product." Demmler, supra, at 431. A warning defect will be found to exist if "the user was not adequately instructed on how to use the product as the product was designed, or where the product was distributed without sufficient warnings to notify the ultimate user of the dangers inherent in the product." Davis v. Berwind Corp., 547 Pa. 260, 267, 690 A.2d 186, 190 (1997). There is a presumption in §402A, that when an individual uses a product, he or she has read and heeded any warning labels attached to that product. (See comment j.)

To succeed on a claim of inadequate or lack of warnings, plaintiff must prove that the lack of a sufficient warning rendered the product unreasonably dangerous and that it was the proximate cause of the injury. Weiner, supra, at 309. To establish causation for failure to warn, it must be demonstrated that the user of the product would have avoided the risk had he or she been warned of it by the seller/manufacturer. Id. at 310. A determination of whether a warning is adequate and whether a product is defective due to inadequate warnings is a question of law to be decided by the trial judge who must determine, under a social policy analysis, whether the imposition of strict liability would be justified under the facts of the case. Id. Liability for failure to warn exists only when there is sufficient evidence that a warning may have made a difference. Nowak by and through Nowak, v. Faberge USA, Inc., 32 F.3d 755, 757 (3rd Cir. 1994).

### C. The Subject Ladder is, as a Matter of Law, Not Defective

It is incumbent upon plaintiffs to prove that a defect in the ladder caused their claimed injuries. While plaintiffs' complaint generally alleges that the ladder was defective, they have provided no credible evidence to support these assertions. Instead, plaintiffs intend to rely on the testimony of Miles Buchman, who opines that the ladder was defective because the crutch tips had worn through, thus exposing the bottom of the front tubular legs of the ladder to the surface of the floor, resulting in a lack of sufficient resistance with the floor and causing the ladder to move when plaintiff reached out to obtain an item from the shelf. According to Mr. Buchman, the crutch tips should have incorporated a metal reinforcement, which would have prevented the feet of the ladder from wearing through. The fallacy in this assertion is twofold. First, the crutch tips on the ladder at the time of the accident were not the originals supplied with it; nor were

they obtained from or manufactured by Gillis.[3] Secondly, the crutch tips that were supplied by Gillis as original equipment incorporate precisely the device (a metal insert) whose absence in Mr. Buchman's mind renders the accident tips defective.

Mr. Buchman opines that a metal disk the diameter of the tubular feet (either welded to the bottom of the legs or inserted into the rubber tip) would have prevented the feet from cutting into the inside of the rubber crutch tips. While Mr. Buchman notes that Gillis "presently" uses such reinforced crutch tips on its ladder and concedes that this design will prevent the accident, he is apparently unaware that this has always been the case. See Exhibit "D". Thus, Mr. Buchman's proposed non-defective "alternative" design is the very same design utilized by Gillis at the time of manufacture and sale. See Exhibit "D". As stated in the attached affidavit, exemplar crutch tips were provided to plaintiffs counsel from Gillis, via defense counsel[4]. This affidavit clearly establishes that the only type of tip Gillis has ever used for the model ladder at issue in this litigation is that which was provided to counsel, which in fact contains a metal insert. See Exhibit "D". Thus, if the crutch tip on the unit at the time of the alleged accident was of a different type or design, it was obtained from a source other than Gillis. See Exhibit "D".

The affidavit obtained from Gillis clearly establishes that the defect alleged in plaintiffs' expert report, i.e. the rubber tips without a metal insert, is not a defect that was created by Gillis. As stated in the attached affidavit, the only type of crutch tip Gillis has ever used for this model of ladder contains a metal insert and is in fact the type of tip which plaintiff's expert opines is required to prevent the accident in question. This same

---

[3] At the request of plaintiffs in discovery, defendant provided a set of rubber crutch tips such as were originally supplied with the ladder when it was manufactured. These crutch tips are made of soft rubber and contain a metal disk on the inside.

[4] These tips were hand-delivered to plaintiff's counsel on or about November 4, 2005 while plaintiffs' expert, Miles Buchman, was examining the ladder at Welex, Inc.

175302.1

type of tip was provided with the ladder as original equipment, and this is the only type of tip Gillis sells as a replacement part. Thus, any defect regarding the deficiency of the crutch tips cannot be attributed to any act or omission on the part of Gillis Associated Industries and plaintiffs' expert cannot establish liability on the part of Gillis with regard to a part it did not supply[5].

        D.        <u>**Plaintiff's Failure to Warn Claim Must Also Fail**</u>

Mr. Buchman opines that the subject ladder was defective because it failed to issue a warning that would protect users from a defect that was known or at least foreseeable to the defendant (the possibility that the tube legs would wear through the rubber crutch tips). <u>See</u>, Exhibit "B", p. 12. However, because the crutch tips provided with the ladder at the time of sale are of precisely the design advocated by Mr. Buchman, there is no defect of which to warn, and the warning suggested by Mr. Buchman is not required. Indeed, the warnings embossed on the subject ladder specifically admonish the user to refrain from climbing "a damaged ladder or one on which the brake mechanism is not operating properly" and to "make sure rubber tips are on legs and that tips rest on floor when you are on ladder." <u>See</u>, Exhibit "F."

The warning suggested by Mr. Buchman is not applicable because it is predicated on the presumed existence of design defect that does not actually exist. Mr. Buchman opines "[t]o properly inspect for <u>this dangerous condition</u>, additional warnings and instructions would be required, such as "weekly, carefully turn ladder on side and inspect the bottom of the rubber tips." *See*, Exhibit "B", p. 12, <u>emphasis added</u>. While Mr. Buchman's suggested warning might be applicable if Gillis failed to incorporate a metal

---

[5] It is surprising, to say the least, that this was not apparent to Mr. Buchman in view of the testimony of plaintiff's coworkers (which he claims to have read) regarding their purchase of replacement tips from sources other than Gillis.

disk to sit between the foot of the ladder and the rubber crutch into the design of the ladder, this is not the case. Because there is no actual design defect, Mr. Buchman's suggested warning to ameliorate such a design defect is not necessary.

### E. The Actions or Inactions of Plaintiff's Employer Rather than any Defect in the Ladder were the Proximate Cause of Plaintiff's Injuries

As Mr. Carr's employer, Welex had a duty to create a safe working environment for all of its employees. <u>Schreffler v. Birdsboro Corp.</u>, 490 F.2d 1148 (3$^{d.}$ Cir. 1974) (directed verdict for manufacturer affirmed where six years passed since equipment was in manufacturer's control, during which time employer was in sole possession and control of the equipment and in view of its obligations as an employer to take steps for the safety of its employees); <u>Mueller v. Jeffrey Mfg. Co.</u>, 494 F.Supp. 275, 278 (E.D. Pa. 1980). <u>See also</u> 63 AM. JUR. 2d Products Liability § 35 (1996) ("The failure of an employer to provide a safe work place for its employees, to provide adequate safety devices, or to warn employees of hazards involved in equipment used at the work place may constitute a superseding cause relieving the product seller or manufacturer of liability.").

Plaintiff's employer, Welex, was the sole entity in possession of the ladder since approximately 1990 and in an exclusive position to adequately and safely maintain the ladder. According to the testimony of plaintiff's co-employees, the investigation revealed that the accident in question occurred as a result of poor maintenance of the ladder. Further, plaintiff's own liability expert has conceded that had the ladder been equipped with rubber tips containing metal inserts, this accident would not have occurred. As set forth above, when the subject ladder was originally manufactured and sold by Gillis, it was equipped with the same reinforced rubber crutch tips that plaintiff's expert

has opined would have prevented this accident. While none of plaintiff's co-employees could conclusively establish where they purchased replacement tips from, it is clear that it was not from Gillis:

> Q: Were you the person who looked through a catalogue and chose that ladder?
>
> A: Yes, I was.
>
> Q: Okay. Were you responsible for purchasing the rubber feet for the ladders?
>
> A: Indirectly.
>
> Q: Indirectly?
>
> A: Yes.
>
> Q: Could you explain?
>
> A: We have a book of parts that's kept at the stockroom counter. Anytime someone in the stockroom is told or notices that we need parts, they will highlight that part in the book. I then key it into the computer as being needed.
>
> \* \* \*
>
> Q: Okay. At any time did you obtain replacement feet from the manufacturer?
>
> A: No.

See, deposition testimony of Samuel Antonelli, Jr., pg. 15-16 attached hereto as Exhibit "E".

Welex did not contact Gillis to obtain replacement crutch tips for the ladder, despite the fact that the toll-free telephone number was prominently displayed on the product. Instead, they simply replaced the crutch tips with ones that were not made of the proper materials required to the safety and integrity of the ladder. See, attached photographs of the ladder, at Exhibit "F".

In further support of Welex's failure to maintain the ladder as the proximate cause of plaintiff's accident, Leslie Jackson testified as follows:

175302.1

> Q: Did you continue to use the ladder after Mr. Carr's accident?
>
> A: No
>
> Q: So the ladder is no longer being used?
>
> A: It is now, yes. But I guess after the accident they pulled it out, I guess Jerry DeLong or whoever wanted to inspect the ladder, see what was wrong.
>
> Q: Are you aware of the finding of Mr. DeLong's inspection?
>
> A: Other than I was told the rubber feet was a little worn. That's about it.

See, deposition testimony of Leslie Jackson, pgs. 28-29 attached hereto as Exhibit "G".

Moreover, Welex's investigation, as evidenced by the report prepared indicates that the cause of Mr. Carr's accident was his inattention and poor maintenance. The poor maintenance to which the report refers is that the feet of the ladder were worn out:

> Q: In the back [of the report] you checked of poor maintenance as a cause of the accident as one of the causes?
>
> A: Yes.
>
> Q: How did you come to that conclusion?
>
> A: Because I was told that the rubber feet on the bottom were worn through and that's a maintenance issue.

See, deposition testimony of Gerald DeLong, page 16 attached hereto as Exhibit "H".

Even if this court finds that the ladder was defective, in order for defendant to be found liable on plaintiffs' claims, they must prove that the lack of a sufficient warning rendered the product unreasonably dangerous and that it was the proximate cause of the injury. Weiner, supra, at 309. To establish causation for failure to warn, it must be demonstrated that the user of the product would have avoided the risk had he or she been warned of it by the seller/manufacturer. Id. at 310. As set forth above, the proximate cause of plaintiff's injury was his employer's failure to maintain and repair the subject ladder. Hence, even if Gillis placed a warning label on the ladder which plaintiffs' expert deems appropriate, this warning would not have made a difference as the evidence in this

case clearly shows that the alleged lack of warning was not the proximate cause of the accident. As such, even if this Court determines that the warning label was insufficient, Gillis is still entitled to summary judgment as a matter of law as the imposition of strict liability is not warranted under the facts of this case. Based upon the foregoing, it is clear that the failure of plaintiff's employer to properly maintain the ladder was the proximate cause of his accident. Thus, defendant is entitled to summary judgment in its favor.

### III. CONCLUSION

Based upon the foregoing, Gillis Associated Industries, Inc. is entitled to summary judgment as the ladder was as a matter or law not defective and the proximate cause of plaintiff's injuries was his employer's failure to adequately and safely maintain the ladder. Accordingly, defendant Gillis Associated Industries, Inc. respectfully requests summary judgment in its favor and against plaintiffs.

                                                Respectfully submitted,
                                                WILSON, ELSER, MOSKOWITZ,
                                                EDELMAN & DICKER LLP

By:     /jmd234/
        Jonathan Dryer, Esquire
        Pa. Atty. ID No. 34496
        Attorney for Defendant
        Gillis Associated Industries, Inc.

Dated: January 30, 2006

# CERTIFICATE OF SERVICE

Jonathan Dryer, Esquire, attorney for defendant Gillis Associated Industries, Inc., a division of Leggett & Platt, Inc., certifies that on January 30, 2006, he sent by United States mail, first class, postage prepaid a true and correct copy of defendant Gillis Associated Industries, Inc., a division of Leggett & Platt, Inc.'s Motion for Summary Judgment to:

        Mark B. Segal, Esquire
        135 West Market Street
       West Chester, PA 19382-2901

                    /jmd234/
                 Jonathan Dryer, Esquire

175302.1